## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BUCHANAN INGERSOLL & ROONEY PC, | ) |
| | ) Civil Action No.: |
| Plaintiff, | ) |
| | ) **COMPLAINT** |
| V. | ) |
| | ) |
| BRANDON BELMONTE, JUDITH | ) |
| BELMONTE AND ZORKA JOVANOVIC | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Plaintiff, Buchanan Ingersoll & Rooney PC ("Buchanan"), by and through its undersigned counsel, hereby files this Complaint against Defendants, Brandon Belmonte ("BB"), Judith Belmonte ("JB") and Zorka Jovanovic ("Jovanovic"); (collectively "Defendants") and in support alleges:

### PARTIES, JURISDICTION, AND VENUE

1.      Buchanan is a professional corporation, organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 501 Grant Street, Suite 200, Pittsburgh, Pennsylvania 15219.  Buchanan has multiple offices, including an office in Newark, New Jersey.

2.      BB is an individual residing at 8 Hamilton Avenue, Weehawken, New Jersey 07086.

3.      JB is an individual residing at 11 Meetinghouse Road, Barkhamsted, Connecticut 06063 and is BB's mother.

4.      Jovanovic is an individual residing at 5 River Road, Nutley, New Jersey 07110.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6.      Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to the Buchanan's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

7.      BB retained Buchanan pursuant to an October 23, 2023, engagement agreement (for legal counseling related services) and a February 1, 2023, engagement agreement (for legal advice regarding real estate matters). The terms of those agreements also covered additional services provided by Buchanan, including legal advice related to transactions, regulatory matters, family law, litigation and general matters.

8.      The key terms of BB's engagement agreements regarding his obligation to make timely payments are the same – Buchanan was to bill him monthly, he was required to pay invoices upon receipt, and Buchanan reserved the right to impose interest at 1.5% per month on balances that remained unpaid for thirty (30) days.  Both of BB's engagement agreements are attached hereto as "**Exhibit A**" and referred to as "BB's Agreements."

9.      Commencing in October 2022, Buchanan performed legal services for BB.

10.     Jovanovic, BB's former girlfriend, retained Buchanan pursuant to a November 30, 2022, engagement agreement (for legal advice related to a domestic dispute).

11.     Per the terms of Jovanovic's engagement agreement, Buchanan was to bill her monthly, and she was required to pay invoices upon receipt.  Jovanovic's engagement agreement is attached hereto as "**Exhibit B**" and referred to as "Jovanovic's Agreement."

12.     Per the terms of Jovanovic's Agreement, BB agreed to guarantee Jovanovic's financial obligations to Buchanan.

13.     Commencing in December 2022, Buchanan performed legal services for Jovanovic.

14.     JB retained Buchanan pursuant to two May 17, 2023, engagement agreements (for legal advice regarding real estate and financing matters).

15.     The key terms of JB's engagement agreements regarding her obligation to make timely payments are the same – Buchanan was to bill her monthly, she was required to pay invoices upon receipt, and Buchanan reserved the right to impose interest at 1.5% per month on balances that remained unpaid for thirty (30) days.  Both of JB's engagement agreements are attached hereto as "**<u>Exhibit C</u>**" and referred to as "JB's Agreements."

16.     Commencing in February 2023, Buchanan performed legal services for JB.

**<u>Outstanding Balance</u>**

17.     Although Buchanan fully complied with its obligations under BB's Agreements, Jovanovic's Agreement and JB's Agreements, BB, JB and Jovanovic have failed to make timely payments.

18.     BB paid the first invoice from December 2022 but since then has failed to pay the next 27 invoices he received on various matters from January 2023 through December 2023.

19.     JB has received five invoices on various matters from June 2023 through August 2023 but has paid none of them.

20.     Jovanovic has received five invoices from December 2022 through March 2023 but has paid none of them.

21.     BB, as guarantor of Jovanovic's legal bills, also has failed to pay Jovanovic's invoices.

22.     Though BB, JB and Jovanovic failed to make timely payments, Buchanan continued to provide them with vast amounts of legal services.

23.     At all times during Buchanan's representation of them, Defendants monitored Buchanan's work and expressed satisfaction with Buchanan's services, often complimenting Buchanan on the legal services it was providing and continuing to request additional work be performed.

24.     Defendants raised no objection or question about any invoice or even any line item on any invoice. In fact, Defendants have never raised a single objection, concern, or question about the quality, quantity, timeliness, or efficiency of Buchanan's work and/or Buchanan's invoices.

25.     To the contrary, BB, for himself and as guarantor, and JB have repeatedly acknowledged that they owe Buchanan the total amount of its unpaid account receivable and have promised to pay the full amount on several occasions.

26.     When Buchanan pressed BB and JB for payment of the full amount of Defendants' account receivable, on multiple occasions BB and JB made promises to pay the amount owed, but BB and JB have continued to fail to abide by their express promises, commitments and obligation to do so.

27.     In addition to BB and JB's numerous promises to pay the outstanding balance, BB and JB have provided at least six checks that have either bounced for insufficient funds, were written to non-existent accounts or were unsigned including the following:

| Bad Check | Date | Amount |
|-----------|------|--------|
| 1 | February 24, 2023 | $40,000 |
| 2 | June 13, 2023 | $260,000 |
| 3 | June 20, 2023 | $250,000 |
| 4 | August 9, 2023 | $500,000 |
| 5 | September 28, 2023 | $510,000 |
| 6 | December 15, 2023 | $390,000 |

28.     Each check that was signed was signed by JB.

29.     Further, BB, on behalf of himself and JB, and JB, through her niece, stated prior to the delivery of the August, September and December checks that they would be "Certified" or "Bank Checks," but they were not.

30.     Additionally, BB, on behalf of himself and JB, and JB, through her niece, promised on numerous occasions to wire funds to Buchanan which would cover the outstanding invoices, however, to date, Buchanan has not received any wired funds.

31.     Despite multiple oral and written promises by BB and JB to pay the outstanding balance, Defendants have made no good faith effort to make payment.

32.     The amounts owed by Defendants are:

| | Principal Owed | Interest as of 1/30/24 | Total Owed as of 1/30/24 |
|---|---|---|---|
| **Brandon Belmonte** | $413,611.98 | $45,977.21 | $459,589.19 |
| **Judith Belmonte** | $ 43,802.55 | $3,527.33 | $ 47,329.88 |
| **Zorka Jovanovic** | $ 18,907.00 | 0 | $ 18,907.00 |
| **Total** | $476,321.53 | $49,504.54 | $525,826.07 |

33.     Interest continues to accrue at 1.5% per month on the unpaid invoices for JB and BB under JB's and BB's Agreements.

34.     Buchanan has honored its obligations under BB's, JB's and Jovanovic's Agreements, provided high quality legal services and deserves to be paid.

35.     In or about August 2023, Buchanan sent a letter to BB (for himself and as Jovanovic's guarantor) and JB outlining the deficiencies and defaults in their payments.  In

response, BB and JB acknowledged their obligations to Buchanan and assured payment was forthcoming.

36.     BB (on behalf of himself and as guarantor of Jovanovic) and JB continued making promises of payment via email, text, phone and in person after their check from August 2023 bounced for insufficient funds and their check from September 2023 was not cashed by the bank because the check was written to a non-existent account.

37.     On November 16, 2023, BB sent an email to Buchanan advising how to allocate the funds that BB said he would be sending via wire transfer and certified funds, but no funds were ever wired and no checks delivered.

38.     On December 7, 2023, having still received no viable payments, Buchanan again sent correspondence to BB and JB setting forth the amounts due on all accounts and seeking to resolve the outstanding balances owed.

39.     BB, on behalf of himself and JB, acknowledged receipt of Buchanan's December correspondence and advised payment was forthcoming. However, no payment was made.

40.     On December 29, 2023, BB forwarded a screen shot purporting to show a wire transfer of funds that had been initiated to Buchanan, but no funds were wired.

## COUNT I – BREACH OF CONTRACT (BB)

41.     Buchanan incorporates the allegations in the preceding paragraphs as though fully set forth herein.

42.     Through BB's Agreements, Buchanan and BB entered into enforceable contracts for the provision of services that was offered by Buchanan and accepted by BB.

43.     Buchanan has honored its obligations to BB under BB's Agreements, provided services, submitted invoices and is entitled to payment.

6

44.     BB has failed to honor his obligations to Buchanan under BB's Agreements, has failed to make timely payments and has therefore breached and remains in breach of BB's Agreements by failing to pay for the legal services and costs provided by Buchanan.

45.     As a direct result of BB's breach of BB's Agreements, Buchanan has been damaged in an amount yet to be determined, but which as of January 30, 2024, was $459,589.19.

**WHEREFORE**, Plaintiff, Buchanan Ingersoll & Rooney PC respectly demands judgment against BB on Count I of its Complaint and for damages to be proven at trial, as well as any such further relief deemed just and proper.

### COUNT II – BREACH OF CONTRACT (JB)

46.     Buchanan incorporates the allegations in the preceding paragraphs as though fully set forth herein.

47.     Through JB's Agreements, Buchanan and JB entered into enforceable contracts for the provision of services that was offered by Buchanan and accepted by JB.

48.     Buchanan has honored its obligations to JB under JB's Agreements, provided services, submitted invoices and is entitled to payment.

49.     JB has failed to honor her obligations to Buchanan under JB's Agreements, has failed to make timely payments and has therefore breached and remains in breach of JB's Agreements by failing to pay for the legal services and costs provided by Buchanan.

50.     As a direct result of JB's breach of JB's Agreements, Buchanan has been damaged in an amount yet to be determined, but which as of January 30, 2024, was $47,329.88.

**WHEREFORE**, Plaintiff, Buchanan Ingersoll & Rooney PC respectly demands judgment against JB on Count II of its Complaint and for damages to be proven at trial, as well as any such further relief deemed just and proper.

## COUNT III – BREACH OF CONTRACT (Jovanovic)

51.     Buchanan incorporates the allegations in the preceding paragraphs as though fully set forth herein.

52.     Through Jovanovic's Agreement, Buchanan and Jovanovic entered into an enforceable contract for the provision of services that was offered by Buchanan and accepted by Jovanovic.

53.     Buchanan has honored its obligations to Jovanovic under Jovanovic's Agreement, provided services, submitted invoices and is entitled to payment.

54.     Jovanovic has failed to honor her obligations to Buchanan under Jovanovic's Agreement, has failed to make timely payments and has therefore breached and remains in breach of Jovanovic's Agreement by failing to pay for the legal services and costs provided by Buchanan.

55.     As a direct result of Jovanovic's breach of Jovanovic's Agreement, Buchanan has been damaged in an amount yet to be determined, but which as of January 30, 2024, was $18,907.00.

**WHEREFORE**, Plaintiff, Buchanan Ingersoll & Rooney PC respectfully demands judgment against Jovanovic on Count III of its Complaint and for damages to be proven at trial, as well as any such further relief deemed just and proper.

## COUNT VI – BREACH OF CONTRACT (BB)

56.     Buchanan incorporates the allegations in the preceding paragraphs as though fully set forth herein.

57.     Through Jovanovic's Agreement, Buchanan and BB entered into an enforceable contract whereby Buchanan agreed to provide legal services to Jovanovic, and BB agreed "to

guarantee the financial obligations set forth" in Jovanovic's Agreement.

58.     Buchanan has honored its obligations to Jovanovic and BB under Jovanovic's Agreement, provided services, submitted invoices and is entitled to payment by BB as a guarantor of Jovanovic's financial obligations.

59.     BB has failed to honor his obligations to Buchanan as a guarantor under Jovanovic's Agreement, has failed to make timely payments and has therefore breached and remains in breach of Jovanovic's Agreement by failing to pay for the legal services and costs provided by Buchanan to Jovanovic.

60.     As a direct result of BB's breach of Jovanovic's Agreement, Buchanan has been damaged in an amount yet to be determined, but which as of January 30, 2024 was $18,907.

**WHEREFORE**, Plaintiff, Buchanan Ingersoll & Rooney PC respectfully demands judgment against BB on Count IV of its Complaint and for damages to be proven at trial, as well as any such further relief deemed just and proper.

## COUNT V – ACCOUNT STATED

61.     Buchanan incorporates the allegations in the preceding paragraphs as though fully set forth herein.

62.     From on or about December 2022 through November 2023, Buchanan provided legal services to Defendants.

63.     Buchanan regularly invoiced Defendants for those legal services with the expectation that it would be paid by Defendants for the attorney's fees and costs generated pursuant to the terms of BB's, JB's and Jovanovic's Agreements.

64.     The December 2022 through November 2023 invoices Defendants received have not been paid, and Defendants raised no questions or objections about these invoices.

65.     BB and JB have repeatedly acknowledged the amounts owed and repeatedly promised to pay these full amounts.

66.     BB and JB through BB repeatedly confirmed the total outstanding fees, costs and interest, promised to pay and then falsely represented that payment was being made via wire transfer or check, but when BB delivered checks, signed by JB, the checks bounced or were written on non-existent accounts.

67.     BB and JB have repeatedly acknowledged what they owe and promised to issue full payment for amounts invoiced, including, for example, when they issued a $510,000 check on September 28, 2023, to cover the full payment.  However, the check was rejected by the bank because it was written on a non-existent account.

68.     Jovanovic has also received Buchanan's detailed invoices and has never raised any objection or question regarding those charges.

69.     Defendants have not made any payments on last 37 invoices issued or on the outstanding account set forth above.

**WHEREFORE**, Plaintiff, Buchanan Ingersoll & Rooney PC respectfully demands judgment against Defendants on Count V of its Complaint and for damages to be proven at trial, as well as any such further relief deemed just and proper.

## COUNT VI– QUANTUM MERUIT

70.     Buchanan incorporates the allegations in the preceding paragraphs as though fully set forth herein.

71.     Upon Defendants' request and promise to pay, Buchanan performed legal services and incurred costs for BB, JB and Jovanovic.  Thus, Buchanan conferred a benefit on Defendants by providing valuable legal services to and incurring costs on behalf of BB, JB and Jovanovic.

72.     Defendants accepted the benefit by Buchanan performing legal services and incurring costs on Defendants' behalf.

73.     Defendants promised to pay Buchanan for the legal services rendered by Buchanan at Buchanan's usual hourly rates and to promptly reimburse Buchanan for all disbursements that it advanced on Defendants' behalf, and BB agreed to guarantee payment for Jovanovic.

74.     Defendants were aware that Buchanan expected to be paid for the legal services rendered to Defendants and costs incurred on their behalf.

75.     Buchanan has, on various occasions, requested payment from Defendants for the legal services rendered and costs incurred on Defendants' behalf.  Although Defendants have promised to make payments for legal services received, they have failed to do so.  As a result, Defendants have been unjustly enriched.

76.     Allowing Defendants to retain the benefit of Buchanan performing legal services and incurring costs on behalf of Defendants would be inequitable.

77.     As a direct and proximate result of Defendants' failure to pay Buchanan for the legal services rendered and costs incurred by Buchanan on Defendants' behalf, Buchanan has suffered damages in excess of $525,826.

**WHEREFORE**, Plaintiff, Buchanan Ingersoll & Rooney PC respectfully demands judgment against Defendants on Count VI of its Complaint and for damages to be proven at trial, as well as any such further relief deemed just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Buchanan prays for judgment against Defendants, Brandon Belmonte, Judith Belmonte and Zorka Jovanovic follows:

1.      For judgment in Buchanan's favor and against Defendants, Brandon Belmonte,

Judith Belmonte and Zorka Jovanovic on all applicable causes of action alleged herein;

2.      For compensatory damages and interest in an amount to be decided by this Court;

3.      For costs of suit incurred herein, as permitted by law; and

4.      For all other relief as the Court may deem to be just and proper.

Dated:  February 14, 2024

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**
By:   /s/ *Christopher U. Warren*
Christopher U. Warren, Esq.
***Plaintiff, Buchanan Ingersoll & Rooney PC***
550 Broad Street, Suite 810
Newark, NJ 07102-4582
973 424 5628 (o)
973 273 9430 (f)
christopher.warren@bipc.com

# EXHIBIT A

**Buchanan Ingersoll ⚊ Rooney** PC

550 Broad Street, Suite 810
Newark, New Jersey  07102-4582
T 973 273 9800
F 973 273 9430
www.bir.com

**Daniel Z. Rivlin**
973 424 5622
daniel.rivlin@bipc.com

October 23, 2022

**By Email – alliedproperties6@gmail.com**
Mr. Brandon Belmonte
8 Hamilton Avenue
Weehawken, NJ 07086

**Re:  Retainer Agreement**

Dear Mr. Belmonte:

Buchanan Ingersoll & Rooney PC ("we" or the "Firm") will provide the legal services described in the attached Appendix A which, together with this letter, establish our agreement ("Agreement").   Appendix A, among other matters, defines the scope of our engagement, identifies you as our sole client in this engagement, describes our fee arrangement, and addresses matters specific to the client-attorney relationship such as communications, future conflicts of interest, and records retention.

I will be principally responsible for this engagement and will be assisted by other attorneys, professionals, and legal assistants as appropriate.

Please take the time to review this Agreement carefully and contact me if you have any questions.  Then, please acknowledge your understanding and agreement by signing a copy on the last page of Appendix A and returning it to me.  Note that these terms will apply to our engagement if you accept our services without returning a signed copy.

The Firm and I appreciate your confidence in us and look forward to working with you.

Sincerely,

BUCHANAN INGERSOLL & ROONEY PC

By: *Daniel Z Rivlin*
         Daniel Z. Rivlin

**APPENDIX A**

**1.**     SCOPE OF REPRESENTATION

Our representation is limited to you individually.  Unless we otherwise agree in writing, we do not have an attorney/client relationship with or professional obligations to your family members or businesses or other entities in which you have an interest.

**2.**     SCOPE OF ENGAGEMENT

We will represent you in connection with counselling relating to the issues between Michael Villani and Zoey Jovanovic.  If necessary, we will represent you in litigation or an alternative dispute process subject to satisfactory arrangements for payment of our anticipated legal fees and costs.

Although this engagement is limited to the matter identified, this Agreement also covers the Firm's engagement terms for representation in transactions, regulatory matters, and general legal counseling.  Before beginning work on a matter involving other parties, we will need to determine if the Firm has any current or past relationships with another party that could present a conflict of interest.

**3.**     BILLING MATTERS

(a)     Legal and Professional Fees.    The charge for our services  is based primarily upon the then current hourly rates of our personnel performing the services.  Our billing rates and charges are revised annually, and we reserve the right to revise them at other times with 30 days' advance notice.  Our current rates for the work described under Scope of Engagement in Section 2 are as follows (fees may also be charged at lesser hourly rates for associates and legal assistants to the extent it is necessary or practical to use their assistance):

| Timekeeper | Hourly Rate |
|---|---|
| Daniel Z. Rivlin | $650.00 |
| | |

(b)     Statements and Payment.  We will provide a monthly statement with a brief description of each entry for time worked and each cost item incurred.  Our invoices are due and payable upon receipt.  The Firm reserves the right to impose interest equal to 1 ½% per month on any balance that remains unpaid for more than thirty (30) days after receipt.

(c)     Costs.   We will invoice for costs incurred during the course of the representation ("Costs").  These may include filing fees, delivery and messenger services, travel, special copying/printing projects, and foreign telephone and fax charges.  Some items may include an adjustment above cost for administrative overhead or will be billed at fair market value, although in some instances the Firm may receive such items on a discounted basis.  You will be responsible to pay directly any invoice or series of invoices for Costs in excess of $500.

(d)     Advance Payment.  The Firm will begin work upon receiving your advance payment of $6,500.00.  The advance payment will be applied against fees and Costs as

incurred and reflected on the monthly statements. At our discretion, we may require an additional prepayment when the existing amount is reduced below $2,500. To the extent permitted by local rules, advance payments will be deposited with the Firm's general funds and will <u>not</u> be held in a segregated trust account. This means that in making an advance payment you are relying on the Firm's financial condition and will not earn interest on the advance payment. Your acceptance of this Agreement or our services confirms your consent to this arrangement.

        (e)    <u>Transaction, Litigation and Professional Costs</u>. If we represent you in a transaction, the Costs may include, for example, lien searches, title searches, and recording/state filing fees. If we represent you in litigation or other dispute resolution proceedings, the Costs may include, for example, experts, investigators, local counsel, court reporters, litigation support vendors video and other deposition charges, e-discovery charges, process servers, and witness fees. If a litigation matter proceeds to court action or arbitration and you are required to pay fees and/or costs to other parties in the action, these payments will be your responsibility and not that of the Firm. You will be responsible to pay directly the fees and costs charged by investigators, consultants, experts, and local counsel you authorize us to engage to assist in representing you. We will only engage such third party service providers with your prior approval.

        (f)    <u>Estimates</u>. Although we may provide an estimate of fees and costs for your guidance, the amount of fees and costs you may incur during the course of our engagement is subject to circumstances that cannot be predicted with certainty. Accordingly, any estimate we provide is not a maximum or fixed fee quotation and does not constitute a guarantee of the actual legal expenses you will incur.

**4.**    <u>CONFLICTS OF INTEREST</u>

        (a)    <u>Advance Waiver of Certain Conflicts of Interest</u>. Recognizing and addressing conflicts of interest is a continuing issue for attorneys and clients because many of our clients have business or personal interactions. We may be asked to represent someone whose interests may differ from or even be adverse to your interests. We are accepting this engagement with your understanding and agreement that while representing you, the Firm may represent another client in the types of adverse matters identified in Section 4.2 below as long as those matters are <u>not</u> the same or substantially related to the particular matters in which we represent you ("Permitted Adverse Representation"). By granting this advance consent and waiver, you are confirming, subject to the conditions above, that you will not (a) seek to disqualify the Firm from representing another client in a Permitted Adverse Representation, or (b) assert that the Permitted Adverse Representation is a breach of our professional duties to you.

        (b)    <u>Permitted Adverse Representations</u>. A Permitted Adverse Representation could involve, for example, the Firm representing and advising another client in the following at the same time we are representing you: (a) defending—but not initiating—a primary claim, dispute, litigation or other proceeding adverse to you; (b) a review, opinion, or challenge involving intellectual property held by you; (c) a business, commercial or real estate negotiation or transaction that may affect your interests or positions directly or indirectly.

(c)     Communications Regarding Conflicts of Interest.  In situations that do not involve a Permitted Adverse Representation, we may ask you to consent to the Firm's representation of another client in an adverse matter.  You agree to consider our request for consent in a timely manner so that we may respond promptly to the client requesting our representation.  In order to assist us in resolving possible conflicts with other clients, you consent to our disclosing the fact that we represent you and the general areas of law involved as long as that disclosure does not itself compromise the confidentiality of our work for you.

(d)     Representations That Are Not Conflicts of Interest.  We do not consider the following to present a conflict of interest with our representation of you:  (a) representing a party that is adverse to your family member or a business in which you have an interest or are employed unless we have established an attorney-client relationship with that person or entity; (b) representing your business competitor; or (c) representing a party that is adverse to you in a matter in which the Firm does not represent you.

**5.      USE OF TECHNOLOGY**

We expect to perform our services and communicate with you using common technologies such as email, electronic document production and storage, and mobile devices. While we implemented security protections, you understand and accept the risks associated with these technologies including, but not limited to, the security risks of interception of, or unauthorized access to, such communications.

**6.      COMMUNICATION AND COOPERATION**

We will keep you informed about the status of matters the Firm is handling.  Our lawyers may express their views about the prospects of these matters; however, these views are not a prediction or guarantee of the outcome and do not constitute a promise or assurance of success. You acknowledge and understand that our ability to represent you effectively depends on your willingness to communicate with us accurately and completely and provide us with relevant documents and information.

**7.      PRESERVATION OF LITIGATION MATERIALS**

If you become involved in litigation, the courts will expect you to have preserved all records that are potentially relevant to any adverse legal proceeding.  This begins with a "litigation hold" addressed to all individuals who may have custody of the records directing them to stop the destruction of potentially relevant or discoverable records and to suspend even routine document destruction under a records retention policy.  Actions to preserve electronic records are important because of the ease with which e-mail and other electronic documents may be destroyed.  The courts will expect the compliance with the litigation hold.

**8.      TERMINATION OF REPRESENTATION**

Our client-attorney relationship will terminate upon completion of the services described under Scope of Engagement in Section 2 above.  Following completion of our engagement, the Firm has no continuing obligation to advise you about future legal developments unless we otherwise agree in writing.   You understand and agree that post-completion administrative

activities such as the following will not extend our representation:  billing and collection; internal Firm recordkeeping including retention of original documents; forwarding correspondence and notices received post-completion; providing courtesy notice of future due dates; and distributing information of general interest about developments in the law and Firm events.

You may discharge us at any time and we also may withdraw from the engagement if we have good cause to do so.  Good cause includes a client's refusal to communicate and co-operate reasonably with us or to follow our advice on a material matter, failure to pay our fees in a timely fashion or any other circumstance permitting withdrawal under the Rules of Professional Conduct.

**9.**     RETENTION OF RECORDS

After our services are concluded, payment has been made, and at your request, the Firm will deliver all documents and property provided to the Firm and documents prepared for purposes of the engagement except for our internal memoranda and records, attorney notes, drafts not intended for external distribution, and similar lawyer working materials.  We may also elect to retain a copy of other portions of the file at our expense.  We reserve the right to dispose of any documents or other materials after seven years following the conclusion of our engagement without further notice to you.  If a client is in breach of its payment or other agreements with the Firm, we may withhold certain portions of the client's records in accordance with the Rules of Professional Conduct.

**10.**    GENERAL PROVISIONS

(a)     Written Modification and Governing Law.  No modification of the terms of our engagement may be enforced against the Firm unless signed or agreed to in writing by the Firm.  The relationship between you and the Firm will be governed in all respects by the law of New Jersey without regard to its conflicts of laws principles.

(b)     Insurance.  The Firm maintains errors and omissions insurance coverage applicable to the services rendered under this Agreement.

**The undersigned hereby confirms that he/she has read the above Agreement including Appendix A, understands the terms contained therein and accepts and agrees to be bound by this Agreement.**

Signature:  _____

Name:  _____ Brandon Belmonte _____

Date: _____

**Buchanan Ingersoll ⚖ Rooney** PC

550 Broad Street, Suite 810
Newark, New Jersey  07102-4582
T 973 273 9800
F 973 273 9430
www.bir.com

**Daniel Z. Rivlin**
973 424 5622
daniel.rivlin@bipc.com

February 1, 2023

**By Email – bb@blackroseequities.com**
Mr. Brandon Belmonte
8 Hamilton Avenue
Weehawken, NJ 07086

Re:  **Retainer Agreement**

Dear Mr. Belmonte:

Buchanan Ingersoll & Rooney PC ("we" or the "Firm") will provide the legal services described in the attached Appendix A which, together with this letter, establish our agreement ("Agreement").   Appendix A, among other matters, defines the scope of our engagement, identifies you as our sole client in this engagement, describes our fee arrangement, and addresses matters specific to the client-attorney relationship such as communications, future conflicts of interest, and records retention.

Edward McMerty, Steve Smith and I will be principally responsible for this engagement and will be assisted by other attorneys, professionals, and legal assistants as appropriate.

Please take the time to review this Agreement carefully and contact me if you have any questions.  Then, please acknowledge your understanding and agreement by signing a copy on the last page of Appendix A and returning it to me.  Note that these terms will apply to our engagement if you accept our services without returning a signed copy.

The Firm and I appreciate your confidence in us and look forward to working with you.

Sincerely,

BUCHANAN INGERSOLL & ROONEY PC

By:  *Daniel Z Rivlin*
Daniel Z. Rivlin

**APPENDIX A**

**1.**     SCOPE OF REPRESENTATION

Our representation is limited to you individually.  Unless we otherwise agree in writing, we do not have an attorney/client relationship with or professional obligations to your family members or businesses or other entities in which you have an interest.

**2.**     SCOPE OF ENGAGEMENT

**We will advise you in connection with the legal aspects of the proposed Blackrose Properties purchase of several properties from Thaniel J. Beinert and his partners (279 4th Avenue, 10-46 Ellington Street, 121 N. Walnut Street, 30 Summit Street, 62-264 Maple Avenue, East Orange, New Jersey and 493 Stuyvesant Avenue, 682 & 749-755 Chancellor Avenue, 732 Lyons Avenue, 18 40th Street, 122-177-160-166 Ellis Avenue, Irvington, New Jersey)  (the "Transaction").  Our engagement will include negotiation, drafting, and review of the various agreements, instruments, authorizations, and governmental filings, closing and post-closing matters.  We will counsel about your legal rights and obligations with respect to the Transaction, but do not provide advice about the business, investment, financial, or accounting aspects.  We will review the legal documents provided for due diligence reviews, but we will not undertake any factual investigation or due diligence into the subject matter or parties involved the Transaction.**

Although this engagement is limited to the matter described above, this Agreement also covers the Firm's engagement terms for other legal matters, including business-related counseling, estate planning, tax and other personal matters, and litigation.  Before beginning work on a matter involving other parties, we will need to determine whether the Firm has any current or past relationships with another party that could present a conflict of interest.

**3.**     BILLING MATTERS

(a)     Legal and Professional Fees.   The charge for our services is based primarily upon the then current hourly rates of our personnel performing the services.  Our billing rates and charges are revised annually, and we reserve the right to revise them at other times with 30 days' advance notice.  Our current rates for the work described under Scope of Engagement in Section 2 are as follows (fees may also be charged at lesser hourly rates for associates and legal assistants to the extent it is necessary or practical to use their assistance):

| Timekeeper | Hourly Rate |
|---|---|
| Edward A. McMerty | $700.00 |
| Daniel Z. Rivlin | $635.00 |
| Steven Smith | $855.00 |
| Adam Wicks | $540.00 |

(b)     <u>Statements and Payment</u>.  We will provide a monthly statement with a brief description of each entry for time worked and each cost item incurred.  Our invoices are due and payable upon receipt.  The Firm reserves the right to impose interest equal to 1 ½% per month on any balance that remains unpaid for more than thirty (30) days after receipt.

(c)     <u>Costs</u>.  We will invoice for costs incurred during the course of the representation ("Costs").  These may include filing fees, delivery and messenger services, travel, special copying/printing projects, and foreign telephone and fax charges.  Some items may include an adjustment above cost for administrative overhead or will be billed at fair market value, although in some instances the Firm may receive such items on a discounted basis.  You will be responsible to pay directly any invoice or series of invoices for Costs in excess of $500.

(d)     <u>Advance Payment</u>.  The Firm will begin work upon receiving your advance payment of $10,000.00.  The advance payment will be applied against fees and Costs as incurred and reflected on the monthly statements.  At our discretion, we may require an additional prepayment when the existing amount is reduced below $5,000.00.  Any positive balance will be refunded upon the completion of our services.  To the extent permitted by local rules, advance payments will be deposited with the Firm's general funds and will <u>not</u> be held in a segregated trust account.  This means that in making an advance payment you are relying on the Firm's financial condition and will not earn interest on the advance payment.  Your acceptance of this Agreement or our services confirms your consent to this arrangement.

(e)     <u>Transaction, Litigation and Professional Costs</u>.  If we represent you in a transaction, the Costs may include, for example, lien searches, title searches, and recording/state filing fees.  If we represent you in litigation or other dispute resolution proceedings, the Costs may include, for example, experts, investigators, local counsel, court reporters, litigation support vendors video and other deposition charges, e-discovery charges, process servers, and witness fees.  If a litigation matter proceeds to court action or arbitration and you are required to pay fees and/or costs to other parties in the action, these payments will be your responsibility and not that of the Firm.  You will be responsible to pay directly the fees and costs charged by investigators, consultants, experts, and local counsel you authorize us to engage to assist in representing you.  We will only engage such third party service providers with your prior approval.

(f)     <u>Estimates</u>.  Although we may provide an estimate of fees and costs for your guidance, the amount of fees and costs you may incur during the course of our engagement is subject to circumstances that cannot be predicted with certainty.  Accordingly, any estimate we provide is not a maximum or fixed fee quotation and does not constitute a guarantee of the actual legal expenses you will incur.

**4.**     <u>CONFLICTS OF INTEREST</u>

(a)     <u>Advance Waiver of Certain Conflicts of Interest</u>.  Recognizing and addressing conflicts of interest is a continuing issue for attorneys and clients because many of our clients have business or personal interactions.  We may be asked to represent someone whose interests may differ from or even be adverse to your interests.  We are accepting this engagement with your understanding and agreement that while representing you, the Firm may represent

another client in the types of adverse matters identified in Section 4.2 below as long as those matters are <u>not</u> the same or substantially related to the particular matters in which we represent you ("Permitted Adverse Representation").  By granting this advance consent and waiver, you are confirming, subject to the conditions above, that you will not (a  seek to disqualify the Firm from representing another client in a Permitted Adverse Representation, or (b) assert that the Permitted Adverse Representation is a breach of our professional duties to you.

       (b)   <u>Permitted Adverse Representations</u>.  A Permitted Adverse Representation could involve, for example, the Firm representing and advising another client in the following at the same time we are representing you:  (a) defending—but not initiating—a primary claim, dispute, litigation or other proceeding adverse to you; (b) a review, opinion, or challenge involving intellectual property held by you; (c) a business, commercial or real estate negotiation or transaction that may affect your interests or positions directly or indirectly.

       (c)   <u>Communications Regarding Conflicts of Interest</u>.  In situations that do not involve a Permitted Adverse Representation, we may ask you to consent to the Firm's representation of another client in an adverse matter.  You agree to consider our request for consent in a timely manner so that we may respond promptly to the client requesting our representation.  In order to assist us in resolving possible conflicts with other clients, you consent to our disclosing the fact that we represent you and the general areas of law involved as long as that disclosure does not itself compromise the confidentiality of our work for you.

       (d)   <u>Representations That Are Not Conflicts of Interest</u>.  We do not consider the following to present a conflict of interest with our representation of you:  (a) representing a party that is adverse to your family member or a business in which you have an interest or are employed unless we have established an attorney-client relationship with that person or entity; (b) representing your business competitor; or (c) representing a party that is adverse to you in a matter in which the Firm does not represent you.

**5.**   <u>USE OF TECHNOLOGY</u>

We expect to perform our services and communicate with you using common technologies such as email, electronic document production and storage, and mobile devices. While we implemented security protections, you understand and accept the risks associated with these technologies including, but not limited to, the security risks of interception of, or unauthorized access to, such communications.

**6.**   <u>COMMUNICATION AND COOPERATION</u>

We will keep you informed about the status of matters the Firm is handling.  Our lawyers may express their views about the prospects of these matters; however, these views are not a prediction or guarantee of the outcome and do not constitute a promise or assurance of success. You acknowledge and understand that our ability to represent you effectively depends on your willingness to communicate with us accurately and completely and provide us with relevant documents and information.

7.      PRESERVATION OF LITIGATION MATERIALS

If you become involved in litigation, the courts will expect you to have preserved all records that are potentially relevant to any adverse legal proceeding.  This begins with a "litigation hold" addressed to all individuals who may have custody of the records directing them to stop the destruction of potentially relevant or discoverable records and to suspend even routine document destruction under a records retention policy.  Actions to preserve electronic records are important because of the ease with which e-mail and other electronic documents may be destroyed.  The courts will expect the compliance with the litigation hold.

8.      TERMINATION OF REPRESENTATION

Our client-attorney relationship will terminate upon completion of the services described under Scope of Engagement in Section 2 above.  Following completion of our engagement, the Firm has no continuing obligation to advise you about future legal developments unless we otherwise agree in writing.  You understand and agree that post-completion administrative activities such as the following will not extend our representation:  billing and collection; internal Firm recordkeeping including retention of original documents; forwarding correspondence and notices received post-completion; providing courtesy notice of future due dates; and distributing information of general interest about developments in the law and Firm events.

You may discharge us at any time and we also may withdraw from the engagement if we have good cause to do so.  Good cause includes a client's refusal to communicate and co-operate reasonably with us or to follow our advice on a material matter, failure to pay our fees in a timely fashion or any other circumstance permitting withdrawal under the Rules of Professional Conduct.

9.      RETENTION OF RECORDS

After our services are concluded, payment has been made, and at your request, the Firm will deliver all documents and property provided to the Firm and documents prepared for purposes of the engagement except for our internal memoranda and records, attorney notes, drafts not intended for external distribution, and similar lawyer working materials.  We may also elect to retain a copy of other portions of the file at our expense.  We reserve the right to dispose of any documents or other materials after seven years following the conclusion of our engagement without further notice to you.  If a client is in breach of its payment or other agreements with the Firm, we may withhold certain portions of the client's records in accordance with the Rules of Professional Conduct.

10.     GENERAL PROVISIONS

10.1    Written Modification and Governing Law.  No modification of the terms of our engagement may be enforced against the Firm unless signed or agreed to in writing by the Firm. The relationship between you and the Firm will be governed in all respects by the law of New Jersey without regard to its conflicts of laws principles.

Insurance.  The Firm maintains errors and omissions insurance coverage applicable to the services rendered under this Agreement.

**The undersigned hereby confirms that he/she has read the above Agreement including Appendix A, understands the terms contained therein and accepts and agrees to be bound by this Agreement.**

Signature:  _____

Name:  _____ Brandon Belmonte _____

Date: _____

# EXHIBIT B

**Buchanan Ingersoll ⚒ Rooney** PC

**Daniel Z. Rivlin**
973 424 5622
daniel.rivlin@bipc.com

550 Broad Street, Suite 810
Newark, New Jersey  07102-4582
T 973 273 9800
F 973 273 9430
www.bir.com

November 30, 2022

**By Email - j.alexa92@hotmail.com**

Ms. Zorka Jovanovic

### Re:  Retainer Agreement

Dear Ms. Jovanovic:

Buchanan Ingersoll & Rooney PC (referred herein as "we", "us" or the "Firm") is pleased to accept your request for legal representation.  This will confirm the terms upon which we have agreed to represent you in connection with the Domestic Violence Complaint and Temporary Restraining Order and custody and support issues between you and Michael Villani.

This Agreement does not apply to any appeals and, if such engagement were to be accepted by this Firm in the future, our representation would have to be evidenced by execution of another and separate retainer agreement pertaining thereto. However, this Agreement in no way obligates us to accept any such engagement in the future.

### Billing Matters

In connection herewith, an initial retainer of $15,000 is being paid to us by Brandon Belmonte.  In the event the initial retainer is not expended at the conclusion of our representation of you, we will return any remaining funds to Mr. Belmonte.  You understand, that in the event Mr. Belmonte does not pay or, if a further retainer is necessary, refuses to pay, you will be responsible for the costs and fees associated with the Firms representation of you.  The initial retainer and any additional retainers shall be held and applied against time charges, reimbursable expenses and disbursements as they may accrue.  Notwithstanding Mr. Belmonte's payment of your legal fees and costs, the Firm's duties are owed solely to you and not to Mr. Belmonte.  Further, Mr. Belmonte may not interfere with the Firm's professional independence in representing you or the Firm's duty of confidentiality to you.

When the unexpended portion of any retainer balance previously paid by you has been or is about to be exhausted, you will be asked to advance an additional retainer in an amount which we shall then discuss and agree upon, which shall be treated on the same terms as the initial retainer.  You understand and acknowledge that the purpose of the initial retainer and any

Ms. Zorka Jovanovic
November 30, 2022
Page 2

additional retainers is for us to have funds in hand prior to rendering services and incurring reimbursable expenses and disbursements on your behalf.

I will be the attorney in the Firm principally responsible for your matter. The charge for our services is based upon the then current hourly rates of our personnel performing the services. My current hourly rate for this matter is $630. I will be assisted in this matter by Argia DiMarco, whose hourly rate for this matter is $575. As and when we deem it appropriate, other attorneys in this Firm may be brought in to work on your case. We will be free to utilize such other attorneys and/or paraprofessional personnel at our Firm as we see fit in performing hereunder. We will charge you at our prevailing rates (charged in increments of 0.1 of an hour).

You shall be responsible for the payment of all out-of-pocket costs, fees and other expenses incurred in connection with your matter, including, but not limited to, court filing fees, transcripts, process servers, messengers, toll, long distance and cellular telephone charges, photocopying charges, charges for computerized legal research, charges for document digitizing and management services, overnight delivery services, postage, local transportation, out-of-town transportation, lodging and meals consumed while traveling out of New Jersey or between court sessions and other necessary and ordinary travel and hotel expenses (hereinafter "disbursements").

You shall also be responsible for the payment of certain of our in-house costs and expenses (hereinafter "reimbursable expenses"), including, but not limited to, photocopying, velobinding of documents, facsimiles, secretarial overtime, in-house document digitizing and management and the cost of meals for attorneys working on your matter during lunch time or after 8:00 P.M. as well as their transportation home by taxi or car service if they are working on your matter after 8:00 P.M. Certain of these charges may include an adjustment above cost for administrative expenses and overhead incurred by the Firm to provide the billed service.

You shall be billed by us on a monthly basis. Each bill will be accompanied by a computer printout which shall indicate (a) the attorney(s) or paralegal(s) who expended the time charges, (b) the hourly rate for each person, (c) the dates on which charges were incurred and the amount of time expended on each day, (d) a brief summary description of the work performed on each day (e.g., court appearance re: *pendente lite* motion; letter to opposing counsel re: support arrears), and (e) the nature and amount of disbursements and reimbursable expenses included in the bill. Our bills to you shall be payable on receipt. You will be expected to review the bills and to raise any objections or inform us of any errors in a timely manner. We will not charge you for time spent in preparing, discussing or explaining our bills.

Additionally, we reserve the right to raise our billing rates and charges for reimbursable expenses from time to time during the course of our representation. Such changes in our hourly rates for the attorney or attorneys principally involved in representing you and other charges will be effective only after thirty (30) days prior written notice thereof shall have been given by us to

Ms. Zorka Jovanovic
November 30, 2022
Page 3

you, and after you have agreed to such changes in a written amendment to this Agreement signed in the same manner as this Agreement. If you object to such increases, we will discuss the matter and any questions you may have.  If you and we do not agree to execute an amendment to this Agreement, we will be free to terminate rendering services to you and, if necessary, seek the court's permission to withdraw as your counsel.

We may, at our option, ask you to pay certain providers (e.g., court reporters, process servers, printers, etc.) directly rather than paying them ourselves and billing you therefor and, if we do so, you agree to pay the bills of such providers in timely fashion.  In addition, various outside experts and professional services may be employed in preparing and presenting your case such as accountants, appraisers, and investigators.  Such services, which might result in substantial cost, will only be employed after consulting with you and with your prior approval, in which event you agree to pay such outside providers directly.

We may from time to time seek an award from the Court in which an action between you and your spouse is pending for interim and/or final counsel fees to be paid by your spouse.  Any counsel fees awarded by the Court shall be credited toward the time charges, reimbursable expenses and disbursements incurred up to that point, or treated as an additional retainer in the manner set forth above.  We may also apply to the Court for one or more awards from your spouse of interim or final accounting, appraisal, or investigative fees and payment of the award thereof by the Court will be applied by us against such charges.

## Scope of Representation

You are the Firm's sole client with respect to this engagement.  Individuals or entities that are related to you, such as your family members or businesses in which you have an interest, are not clients of Buchanan Ingersoll & Rooney, unless we otherwise agree in writing.

## Advance Waiver of Certain Conflicts of Interest

Recognizing and addressing conflicts of interest is a continuing issue for attorneys and clients.  We have implemented policies and procedures to identify actual and potential conflicts at the outset of each engagement.  From time to time we may be asked to represent someone whose interests may differ from or even be adverse to the interests of you.  We are accepting this engagement with your understanding and express consent that our representation of you will not preclude us from accepting an engagement from a new or existing client that is adverse to you ("Adverse Representation") except under the circumstances identified below.  By granting this advance waiver, you are relinquishing your right to receive detailed information about a proposed Adverse Representation and to decide on a case by case basis whether or not to give your consent.  An Adverse Representation could involve, for example, the Firm representing another client in any of the following:  litigation adverse to you; a review, opinion, or challenge involving intellectual property held by you; a business, commercial or real estate

Ms. Zorka Jovanovic
November 30, 2022
Page 4

transaction between you and the other client; or representing other businesses in the same industry as you in government relations, lobbying, and legislative/administrative/executive activities.  However, the Firm will not accept an Adverse Representation that is substantially related to the matters in which we represent you.  Also, we will not accept an Adverse Representation if because of our representation of you we obtained confidential information that is material to the Adverse Representation.

Notwithstanding the foregoing, you recognize and acknowledge that this firm represents Brandon Belmonte individually and in connection with certain businesses.  You recognize and waive any potential conflict of interest in the Firm counseling, advising or otherwise representing Brandon Belmonte.  Further, if there is a conflict that cannot be waived, you recognize that we will end our relationship with you and continue with our representation of Mr. Belmonte.  You specifically consent and agree that you will not oppose or otherwise seek to end that representation.

## Standard Terms of Engagement

The relationship of attorney and client is a privileged one.  You acknowledge and understand that our ability to represent you depends on your willingness to communicate with us openly and completely and provide us with relevant documents and information, and that in rendering our professional judgments and guidance we shall rely on the accuracy of your communications.  The written Statement of Client's Rights and Responsibilities in Civil Family Actions which is provided to you with this Agreement sets forth more fully your rights and responsibilities.

You are entitled to make the ultimate decision on the objectives to be pursued in your case (but not the steps to be taken or the strategy or means to be employed in pursuing those objectives), and to make the final decision regarding the settlement of your case.  While you are not obliged to accept our guidance and advice, it may be appropriate for us to reconsider continuation of our professional relationship if at any point you do not follow our guidance and advice, or if you do not communicate with us regarding your case.  If you do not follow our advice and guidance, we will be free to terminate rendering services to you and, if necessary, seek the Court's permission to withdraw as your counsel.  Further, if our bills, or the bills of any third party provider whose bills we have asked you to pay directly, are not promptly paid by you when rendered, or if we fail to agree as to the amount and/or terms of any additional retainer requested by us, or regarding any change in our billing rates or other charges, you agree that the occurrence of any such circumstance shall constitute good cause for termination of our representation of you, or, if necessary, we shall be free to apply to the court for permission to withdraw as your attorneys in any pending action between you and your spouse.  In such event, you will not be billed for any work performed by us in seeking such withdrawal after we notify you of our intent to withdraw and you will not contest our withdrawal.  However, you shall

Ms. Zorka Jovanovic
November 30, 2022
Page 5

remain liable for work we otherwise perform and reimbursable expenses and disbursements incurred in connection with your matter until withdrawal is complete.

You have the right to refuse to enter into this Agreement. After signing this Agreement, you have the right in your sole discretion to terminate our representation of you. In the event our representation is terminated for any reason, any unexpended balance of retainers advanced by you shall be refunded to you as soon as practicable, after all unbilled and/or unpaid time charges, reimbursable expenses and disbursements incurred up to that time have been calculated and an itemized final bill has been sent to you as set forth above.

We will provide you with copies of correspondence and legal documents relating to your case prepared on your behalf or received from the court or your spouse, at your expense and within a reasonable time after they are prepared or received by us, unless you advise us in writing not to send you copies, or to send you only certain specified documents upon request. We will promptly notify you of any developments in your matter, including all court conferences. We shall endeavor to perform our services economically, efficiently and timely. You acknowledge that we have made no representations to you, express or implied, concerning the outcome of negotiations between you and your spouse or any litigation between you and your spouse. You further acknowledge that this Firm has not guaranteed and cannot guarantee the success of any action taken by us on your behalf during any such negotiation or litigation with respect to any matter therein, including, without limitation, *obtaining a Final Restraining Order against Michael Villani, an initial or final award of custody, parenting time and/or child support*.

## Clients Rights and Responsibilities

Attached to this Retainer Agreement and made a part of this Agreement is a document called "Statement of Client Rights and Responsibilities in Civil Family Actions." In addition, you agree to preserve and retain, as well as refrain from destroying or deleting, any documents or electronic, digital, or magnetic records so long as this matter is pending. In the event you are unsure whether you must keep any of the aforesaid, you agree to consult with and obtain the legal advice of the Firm. We strongly urge you to read this document carefully prior to signing this Retainer Agreement. The Firm considers the Statement to be of the utmost importance. In executing this Agreement, we promise to comply with it, and so do you.

## Complementary Dispute Resolution

Attached to this Retainer Agreement and made a part of this Agreement is a document called "Dispute Resolution Alternatives to Conventional Litigation," which is descriptive material, approved by the Supreme Court of New Jersey, describing alternatives to litigation. By executing this agreement, you acknowledge that a representative of the Firm has advised you as

Ms. Zorka Jovanovic
November 30, 2022
Page 6

to the availability of Complementary Dispute Resolution (CDR) programs including, but not limited to, mediation and arbitration.  We suggest that you carefully and thoughtfully consider the alternatives set forth therein.  If you wish to discuss any of the programs contained in this material, feel free to contact me at (973) 424-5622.

By executing this agreement, you acknowledge that a representative of the Law Firm has advised you as to the availability of Complementary Dispute Resolution (CDR) programs available including, but not limited to, mediation and arbitration.

If you agree to the terms of this Agreement, please countersign the attached copy and return it to us.  A copy of this Agreement and any amendments thereto will be filed with the court in which your case is or may later be pending.  If you have any questions about any provisions of this Agreement, you should discuss them fully with us before signing it.

Facsimile signatures hereto shall have the same force and effect as original signatures.

We appreciate the opportunity to represent you and look forward to a successful relationship.

Very truly yours,

BUCHANAN INGERSOLL & ROONEY PC

By: *Daniel Z Rivlin*

Daniel Z. Rivlin

UNDERSTOOD, ACCEPTED AND AGREED:

_____

NAME:  Zorka Jovanovic

Ms. Zorka Jovanovic
November 30, 2022
Page 7


Dated:_____


       I, Brandon Belmonte, accept and agree to guarantee the financial obligations set forth herein.


_____
NAME:  Brandon Belmonte

Dated:_____

Ms. Zorka Jovanovic
November 30, 2022
Page 6

to the availability of Complementary Dispute Resolution (CDR) programs including, but not limited to, mediation and arbitration. We suggest that you carefully and thoughtfully consider the alternatives set forth therein. If you wish to discuss any of the programs contained in this material, feel free to contact me at (973) 424-5622.

By executing this agreement, you acknowledge that a representative of the Law Firm has advised you as to the availability of Complementary Dispute Resolution (CDR) programs available including, but not limited to, mediation and arbitration.

If you agree to the terms of this Agreement, please countersign the attached copy and return it to us. A copy of this Agreement and any amendments thereto will be filed with the court in which your case is or may later be pending. If you have any questions about any provisions of this Agreement, you should discuss them fully with us before signing it.

Facsimile signatures hereto shall have the same force and effect as original signatures.

We appreciate the opportunity to represent you and look forward to a successful relationship.

Very truly yours,

BUCHANAN INGERSOLL & ROONEY PC

By: *Daniel Z Rivlin*

Daniel Z. Rivlin

UNDERSTOOD, ACCEPTED AND AGREED:

NAME: Zorka Jovanovic

Ms. Zorka Jovanovic
November 30, 2022
Page 7


Dated: __11-30-22__


I, Brandon Belmonte, accept and agree to guarantee the financial obligations set forth herein.

NAME: Brandon Belmonte

Dated: __11-30-22__

## **STATEMENT OF CLIENT RIGHTS AND RESPONSIBILITIES**
## **IN CIVIL FAMILY ACTIONS**

### **A.  Client Rights**

1. **Clients have the right to have their attorneys diligently advocate their interests within the bounds of the law and legal ethics.**

2. **Clients have the right to have the fee arrangement fully and completely explained prior to entering into any agreement for services.**

3. **Clients have the right to have a written Retainer Agreement describing the financial terms of the relationship between the client and the attorney.**

4. **Clients have the right to refuse to enter into any unacceptable fee arrangement or modification of a fee arrangement.**

5. **Clients have the right to be provided information as to the attorney(s) who will be primarily responsible for their matter and all other legal staff who will be working on the matter as well as information as to the costs for those individuals.**

6. **Clients have the right to be provided bills on a regular basis, itemized as to the charges and time spent on each activity.**

7. **Clients have the right to be informed of and be present at any court proceeding involving their case unless otherwise directed by the court.**

8. **Clients have the right to be provided copies of all documents presented to the court by any party in their matter unless otherwise ordered by the court.**

9. **Clients have the right to be afforded reasonable access to their attorneys.**

10. **Clients have the right to make the final decision as to whether, when, and how to settle their cases and as to economic and other positions to be taken with respect to issues in the case.**

## B.  <u>Client Responsibilities</u>

1.     Clients shall provide full and accurate information to their attorneys regarding their matter.

2.     Clients shall be available to participate in a timely fashion regarding their matter and to respond reasonably to requests from their counsel.

3.     Clients shall advise their attorneys promptly of any change in their lives that might reasonably be expected to affect the handling of their matter.

4.     Clients shall pay for the legal services rendered on their behalf within the time period set forth in the retainer agreement.

5.     Clients shall be required to review diligently all bills submitted by their attorneys and within a reasonable time to raise any objections regarding billing.

6.     Clients shall not take any position in their matter for any improper purpose, such as to delay the proceeding or intentionally to increase the cost to other litigants.

7.     Clients shall not seek to use their attorneys for any improper means.

8.     Clients must recognize and be responsible for the costs associated with any action initiated or requested by the client.

9.     Clients shall provide sufficient time for their attorneys to explain to them the financial costs and other ramifications of a potential action in their matter and reasonably to consider the advice of their attorneys.

## DISPUTE RESOLUTION ALTERNATIVES

## TO CONVENTIONAL LITIGATION[*]

**[Text Promulgated 12/04/06 as Approved by the Supreme Court]**

Resolving issues concerning custody and support can be costly and difficult.  Only a judge can actually grant an order relating to child support, custody and parenting time.  A judge can decide all issues at trial.  However, there are other ways to resolve many of these issues.  These alternative dispute resolution methods offer greater privacy than resolving the issues in a public trial.  They also may be faster and less expensive, and may reduce the level of conflict between you and your child's other parent.  You are encouraged to discuss alternative dispute resolution with your lawyer to decide whether these alternate methods may help you and your spouse resolve as many of the issues relating to your custody and support issues as possible before the matter is presented to the judge.

What follows are short descriptions of various forms of alternative dispute resolution that may be used in cases.

## MEDIATION[**]

Mediation is a means of resolving differences with the help of a trained, impartial third party.  The parties, with or without lawyers, are brought together by the mediator in a neutral setting.  A mediator does not represent either side and does not offer legal advice.  Parties are encouraged to retain an attorney to advise them of their rights during the mediation process.  The mediator helps the parties identify the issues, gather the information they need to make informed decisions, and communicate so that they can find a solution agreeable to both.  Mediation is designed to facilitate settlements in an informal, non-adversarial manner.  The court maintains a roster of approved mediators or you can use private mediation services.

---

[*]This constitutes the "descriptive material" referenced in Rule 5:4-2(h) that each divorce litigant must receive and certify as having received (using the attached certification forms).
[**]Note: The adoption of Rule 5:4-2(h) and the promulgation of this descriptive material is in no way intended to indicate any change in the Court's policy, grounded in statutes and court rules, against mediation in any matter in which a temporary or final restraining order has been entered pursuant to the Prevention of Domestic Violence Act.

## ARBITRATION

In an arbitration proceeding, an impartial third party decides issues in a case.  The parties select the arbitrator and agree on which issues the arbitrator will decide.  The parties also agree in advance whether the arbitrator's decision will be binding on them or instead treated merely as a recommendation.

## USE OF PROFESSIONALS

Parties in a custody and support proceeding may also seek the assistance of other skilled professionals to help resolve issues in a case, such as attorneys, accountants or other financial professionals, and various types of mental health professionals (*e.g.*, psychiatrists, psychologists, social workers, therapists).  These professionals may help the parties resolve all of the issues or just specific portions of the case.  As with mediation and arbitration, parties make use of these professional to resolve issues and are encouraged to consult their attorney for advice throughout this process.

## COMBINATIONS OF ALTERNATIVES

Depending on your circumstances, it may be helpful for you to use a combination of mediation, arbitration, and skilled professionals to resolve custody and support issues.

## CONCLUSION

Just as every relationship is unique, every legal proceeding is unique as well.  The specific circumstances determine what method or methods of dispute resolution are best suited to resolve your issues.  You are encouraged to ask your attorney about these alternative dispute resolution methods to resolve your issues.

Using these alternative dispute resolution methods allows you to participate in the decision on those issues, rather than leaving all of the issues to the judge to decide.  And presenting the judge with a case in which the issues are limited will permit that decision to be made more expeditiously.  Your role in deciding some or all of the issues can be enhanced through these alternative dispute resolution methods.

# EXHIBIT C

**Buchanan Ingersoll ▲ Rooney** PC

550 Broad Street, Suite 810
Newark, New Jersey  07102-4582
T 973 273 9800
F 973 273 9430
www.bir.com

**Daniel Z. Rivlin**
973 424 5622
daniel.rivlin@bipc.com

May 17, 2023

**By Email –allied.construction@aol.com**
Ms. Judith Belmonte

**Re:  Retainer Agreement**

Dear Ms. Belmonte:

Buchanan Ingersoll & Rooney PC ("we" or the "Firm") will provide the legal services described in the attached Appendix A which, together with this letter, establish our agreement ("Agreement").   Appendix A, among other matters, defines the scope of our engagement, identifies you as our sole client in this engagement, describes our fee arrangement, and addresses matters specific to the client-attorney relationship such as communications, future conflicts of interest, and records retention.

Edward McMerty and I will be principally responsible for this engagement and will be assisted by other attorneys, professionals, and legal assistants as appropriate.

Please take the time to review this Agreement carefully and contact me if you have any questions.  Then, please acknowledge your understanding and agreement by signing a copy on the last page of Appendix A and returning it to me.  Note that these terms will apply to our engagement if you accept our services without returning a signed copy.

The Firm and I appreciate your confidence in us and look forward to working with you.

Sincerely,

BUCHANAN INGERSOLL & ROONEY PC

By: *Daniel Z Rivlin*

Daniel Z. Rivlin

## APPENDIX A

**1.**    SCOPE OF REPRESENTATION

Our representation is limited to you individually.  Unless we otherwise agree in writing, we do not have an attorney/client relationship with or professional obligations to your family members or businesses or other entities in which you have an interest.

**2.**    <u>SCOPE OF ENGAGEMENT</u>

**We will advise you in connection with the legal aspects of and drafting of loan documents for Blackrose Kent NJ LLC's loan of $15,000,000.00 to Shifra Hagar relating to 200 Kent Avenue, Brooklyn, New York 11249 (the "Transaction").  Our engagement will include negotiation, drafting, and review of the various agreements, instruments, authorizations, and governmental filings, closing and post-closing matters.  We will counsel about your legal rights and obligations with respect to the Transaction, but do not provide advice about the business, investment, financial, or accounting aspects.  We will review the legal documents provided for due diligence reviews, but we will not undertake any factual investigation or due diligence into the subject matter or parties involved the Transaction.**

Although this engagement is limited to the matter described above, this Agreement also covers the Firm's engagement terms for other legal matters, including business-related counseling, estate planning, tax and other personal matters, and litigation.  Before beginning work on a matter involving other parties, we will need to determine whether the Firm has any current or past relationships with another party that could present a conflict of interest.

**3.**    <u>BILLING MATTERS</u>

(a)    <u>Legal and Professional Fees</u>.  The charge for our services is based primarily upon the then current hourly rates of our personnel performing the services.  Our billing rates and charges are revised annually, and we reserve the right to revise them at other times with 30 days' advance notice.  Our current rates for the work described under Scope of Engagement in Section 2 are as follows (fees may also be charged at lesser hourly rates for associates and legal assistants to the extent it is necessary or practical to use their assistance):

| Timekeeper | Hourly Rate |
|---|---|
| Edward A. McMerty | $700.00 |
| Daniel Z. Rivlin | $635.00 |

(b)    <u>Statements and Payment</u>.  We will provide a monthly statement with a brief description of each entry for time worked and each cost item incurred.  Our invoices are

due and payable upon receipt.  The Firm reserves the right to impose interest equal to 1 ½% per month on any balance that remains unpaid for more than thirty (30) days after receipt.

(c)   <u>Costs</u>.  We will invoice for costs incurred during the course of the representation ("Costs").  These may include filing fees, delivery and messenger services, travel, special copying/printing projects, and foreign telephone and fax charges.  Some items may include an adjustment above cost for administrative overhead or will be billed at fair market value, although in some instances the Firm may receive such items on a discounted basis.  You will be responsible to pay directly any invoice or series of invoices for Costs in excess of $500.

(d)   <u>Advance Payment</u>.  The Firm will begin work upon receiving your advance payment of $10,000.00.  The advance payment will be applied against fees and Costs as incurred and reflected on the monthly statements.  At our discretion, we may require an additional prepayment when the existing amount is reduced below $5,000.00.  Any positive balance will be refunded upon the completion of our services.  To the extent permitted by local rules, advance payments will be deposited with the Firm's general funds and will <u>not</u> be held in a segregated trust account.  This means that in making an advance payment you are relying on the Firm's financial condition and will not earn interest on the advance payment.  Your acceptance of this Agreement or our services confirms your consent to this arrangement.

(e)   <u>Transaction, Litigation and Professional Costs</u>.  If we represent you in a transaction, the Costs may include, for example, lien searches, title searches, and recording/state filing fees.  If we represent you in litigation or other dispute resolution proceedings, the Costs may include, for example, experts, investigators, local counsel, court reporters, litigation support vendors video and other deposition charges, e-discovery charges, process servers, and witness fees.  If a litigation matter proceeds to court action or arbitration and you are required to pay fees and/or costs to other parties in the action, these payments will be your responsibility and not that of the Firm.  You will be responsible to pay directly the fees and costs charged by investigators, consultants, experts, and local counsel you authorize us to engage to assist in representing you.  We will only engage such third party service providers with your prior approval.

(f)   <u>Estimates</u>.  Although we may provide an estimate of fees and costs for your guidance, the amount of fees and costs you may incur during the course of our engagement is subject to circumstances that cannot be predicted with certainty.  Accordingly, any estimate we provide is not a maximum or fixed fee quotation and does not constitute a guarantee of the actual legal expenses you will incur.

**4.**   <u>CONFLICTS OF INTEREST</u>

(a)   <u>Advance Waiver of Certain Conflicts of Interest</u>.  Recognizing and addressing conflicts of interest is a continuing issue for attorneys and clients because many of our clients have business or personal interactions.  We may be asked to represent someone whose interests may differ from or even be adverse to your interests.  We are accepting this engagement with your understanding and agreement that while representing you, the Firm may represent another client in the types of adverse matters identified in Section 4.2 below as long as those

matters are <u>not</u> the same or substantially related to the particular matters in which we represent you ("Permitted Adverse Representation").  By granting this advance consent and waiver, you are confirming, subject to the conditions above, that you will not (a  seek to disqualify the Firm from representing another client in a Permitted Adverse Representation, or (b) assert that the Permitted Adverse Representation is a breach of our professional duties to you.

        (b)    <u>Permitted Adverse Representations</u>.  A Permitted Adverse Representation could involve, for example, the Firm representing and advising another client in the following at the same time we are representing you:  (a) defending—but not initiating—a primary claim, dispute, litigation or other proceeding adverse to you; (b) a review, opinion, or challenge involving intellectual property held by you; (c) a business, commercial or real estate negotiation or transaction that may affect your interests or positions directly or indirectly.

        (c)    <u>Communications Regarding Conflicts of Interest</u>.  In situations that do not involve a Permitted Adverse Representation, we may ask you to consent to the Firm's representation of another client in an adverse matter.  You agree to consider our request for consent in a timely manner so that we may respond promptly to the client requesting our representation.  In order to assist us in resolving possible conflicts with other clients, you consent to our disclosing the fact that we represent you and the general areas of law involved as long as that disclosure does not itself compromise the confidentiality of our work for you.

        (d)    <u>Representations That Are Not Conflicts of Interest</u>.  We do not consider the following to present a conflict of interest with our representation of you:  (a) representing a party that is adverse to your family member or a business in which you have an interest or are employed unless we have established an attorney-client relationship with that person or entity; (b) representing your business competitor; or (c) representing a party that is adverse to you in a matter in which the Firm does not represent you.

**5.**    <u>USE OF TECHNOLOGY</u>

        We expect to perform our services and communicate with you using common technologies such as email, electronic document production and storage, and mobile devices.  While we implemented security protections, you understand and accept the risks associated with these technologies including, but not limited to, the security risks of interception of, or unauthorized access to, such communications.

**6.**    <u>COMMUNICATION AND COOPERATION</u>

        We will keep you informed about the status of matters the Firm is handling.  Our lawyers may express their views about the prospects of these matters; however, these views are not a prediction or guarantee of the outcome and do not constitute a promise or assurance of success.  You acknowledge and understand that our ability to represent you effectively depends on your willingness to communicate with us accurately and completely and provide us with relevant documents and information.

**7.**    <u>PRESERVATION OF LITIGATION MATERIALS</u>

If you become involved in litigation, the courts will expect you to have preserved all records that are potentially relevant to any adverse legal proceeding. This begins with a "litigation hold" addressed to all individuals who may have custody of the records directing them to stop the destruction of potentially relevant or discoverable records and to suspend even routine document destruction under a records retention policy. Actions to preserve electronic records are important because of the ease with which e-mail and other electronic documents may be destroyed. The courts will expect the compliance with the litigation hold.

**8.** <u>TERMINATION OF REPRESENTATION</u>

Our client-attorney relationship will terminate upon completion of the services described under Scope of Engagement in Section 2 above. Following completion of our engagement, the Firm has no continuing obligation to advise you about future legal developments unless we otherwise agree in writing. You understand and agree that post-completion administrative activities such as the following will not extend our representation: billing and collection; internal Firm recordkeeping including retention of original documents; forwarding correspondence and notices received post-completion; providing courtesy notice of future due dates; and distributing information of general interest about developments in the law and Firm events.

You may discharge us at any time and we also may withdraw from the engagement if we have good cause to do so. Good cause includes a client's refusal to communicate and co-operate reasonably with us or to follow our advice on a material matter, failure to pay our fees in a timely fashion or any other circumstance permitting withdrawal under the Rules of Professional Conduct.

**9.** <u>RETENTION OF RECORDS</u>

After our services are concluded, payment has been made, and at your request, the Firm will deliver all documents and property provided to the Firm and documents prepared for purposes of the engagement except for our internal memoranda and records, attorney notes, drafts not intended for external distribution, and similar lawyer working materials. We may also elect to retain a copy of other portions of the file at our expense. We reserve the right to dispose of any documents or other materials after seven years following the conclusion of our engagement without further notice to you. If a client is in breach of its payment or other agreements with the Firm, we may withhold certain portions of the client's records in accordance with the Rules of Professional Conduct.

**10.** <u>GENERAL PROVISIONS</u>

10.1   <u>Written Modification and Governing Law</u>.  No modification of the terms of our engagement may be enforced against the Firm unless signed or agreed to in writing by the Firm. The relationship between you and the Firm will be governed in all respects by the law of New Jersey without regard to its conflicts of laws principles.

10.2   <u>Insurance</u>.  The Firm maintains errors and omissions insurance coverage applicable to the services rendered under this Agreement.

10.3   <u>Communication/Direction</u>.  You have authorized us to take direction from Brandon Belmonte on your behalf.  It is understood that you may withdraw, modify or limit that authorization at your discretion upon written notice to us.  he Firm maintains errors and omissions insurance coverage applicable to the services rendered under this Agreement.


**The undersigned hereby confirms that he/she has read the above Agreement including Appendix A, understands the terms contained therein and accepts and agrees to be bound by this Agreement.**

Signature:

Name: _____ Judith Belmonte _____

Date: _____